Jeffrey D. Kaliel (CA Bar No. 238293)
jkaliel@kalielpllc.com
Sophia Goren Gold (CA Bar No. 307971)
sgold@kalielpllc.com
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
(202) 350-4783

**CARLSON LYNCH SWEET
KILPELA & CARPENTER, LLP**
Todd D. Carpenter (CA 234464)
Alyshia K. Lord (CA 306555)
1350 Columbia Street, Ste. 603
San Diego, California 92101
Telephone: 619.762.1910
Facsimile: 619.756.6991
tcarpenter@carlsonlynch.com
alord@carlsonlynch.com

*Attorneys for Plaintiff and
Proposed Class Counsel*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEN SCHERTZER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BARNEYS NEW YORK, INC., a Delaware Corporation, and DOES 1- 50, inclusive,<br><br>Defendant. | Case No. **'19CV320  H    LL**<br><br>**CLASS ACTION**<br><br>**COMPLAINT**<br><br>1. **Violation of California's Unfair Competition Laws ("UCL"); California Business & Professions Code Sections 17200,** *et seq.*<br><br>2. **Violation of California's False Advertising Laws ("FAL"); California Business & Professions Code Sections 17500,** *et seq.*<br><br>3. **Violations of California Consumer Legal Remedies Act ("CLRA"); Civ. Code § 1750,** *et seq.*<br><br>**[DEMAND FOR JURY TRIAL]** |

COMPLAINT

Plaintiff Kristen Schertzer brings this action on behalf of herself and all others similarly situated against Defendant BARNEYS NEW YORK, INC. ("Defendant" or "BARNEYS"), and states:

## I.  NATURE OF ACTION

1. "If everyone is getting a deal, is anyone really getting a deal?"[1] This class action targets Barneys' unlawful, unfair, and fraudulent business practice of advertising fictitious prices and corresponding phantom discounts on merchandise sold in its retail outlet stores, Barneys Warehouse. This practice of false reference pricing occurs when a retailer fabricates a fake regular, original, and/or former reference price, and then offers an item for sale at a deep "discounted" price. The result is a sham price disparity that misleads consumers into believing they are receiving a good deal and induces them into making a purchase. Retailers drastically benefit from employing a false reference pricing scheme and experience increased sales.

2. The California legislature and federal regulations prohibit this misleading practice. The law recognizes the reality that consumers often purchase merchandise marketed as being "on sale" purely because the proffered discount seemed too good to pass up. Accordingly, retailers, including Defendant, have an incentive to lie to customers and advertise false sales. The resulting harm is tangible- the bargain hunter's expectations about the product she purchased is that it has a higher perceived value and she may not have purchased the product but for the false savings.

3. The net effect of the practice is that the market value of the falsely advertised product is artificially inflated because the product is never subjected to true market forces absent the communication of inflated value made by the false discounting. For example: is a consumer more likely to purchase a jacket for $100.00 if it is 90% off of an "original" price of $1,000.00; or are they more likely to purchase a $100.00 jacket, advertised at its

---

[1] David Streitfeld, *It's Discounted, but is it a Deal? How List Prices Lost Their Meaning*, New York Times, https://www.nytimes.com/2016/03/06/technology/its-discounted-but-is-it-a-deal-how-list-prices-lost-their-meaning.html, (March 6, 2016), last accessed April 28, 2017.

true price of $100.00?  Of course the "false reference price" of $1,000.00 and the purported 90% discount will dramatically impact consumer behavior and result in more sales, which permits the retailer to recoup a higher market price for the jacket than if the jacket were advertised legally, at its true market price. The delta between the true market price of the product and the price at which the retailer is able to sell the produce utilizing its false discounting scheme, are the consumers' damages.

4. Barneys utilizes a false and misleading reference price in the marketing and selling of merchandise sold in its retail outlet stores. Barneys advertises its merchandise for sale by attaching a price tag to the item that sets forth a fictitious reference price, or regular price. The reference price appears as a strikethrough, for example, "$~~575.00~~" followed by the discounted price at which the item is being offered for sale, i.e. "$289.00." *See e.g.* Exhibit A.

5. However, the reference price is total fiction. The merchandise sold at Barneys outlet stores is never offered for sale, nor actually sold, at the represented reference price. The reference price is used exclusively as a benchmark from which the false discount and corresponding "Sale" price is derived. Barneys' scheme has the effect of tricking consumers into believing they are getting a significant deal by purchasing merchandise at a steep discount, when in reality, consumers are paying for merchandise at its regular retail price.

6. The advertised discounts are fictitious because the reference price does not represent a *bona fide* price at which Barneys previously sold a substantial quantity of the merchandise for a reasonable period of time as required by the Federal Trade Commission ("FTC"). In addition, the represented reference price was not the prevailing market retail price within the three months immediately preceding the publication of the advertised former reference price, as required by California law. Further, upon information and belief, Barneys' products that are identified with "white price tags" represent items that were never sold in a Barneys retail store and were made exclusively for Barneys Warehouse. The deception is magnified for those products, because the representation of

2
COMPLAINT

the false reference price leads consumers to believe they are purchasing a product of substantially higher quality than the products sold in the outlet and that they are purchasing a product that was previously offered for sale at a Barneys retail store---at the significantly higher, reference price.

7. Through its false and misleading marketing, advertising, and pricing scheme, Barneys violated and continues to violate California and federal law prohibiting advertising goods for sale as discounted from former prices that are false, and prohibiting misleading statements about the existence and amount of price reductions. Specifically, Barneys violated and continues to violate: California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.* (the "UCL"); California's False Advertising Law, Business & Professions Code §§ 17500, *et seq.* (the "FAL"); the California Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA"); and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and false advertisements (15 U.S.C. § 52(a)).

8. Plaintiff brings this action on behalf of herself and other similarly situated consumers who have purchased one or more items of clothing, shoes, accessories, jewelry, makeup, cologne, perfume, bedding, home goods, or more from Barneys' retail outlet store that were deceptively represented as discounted from false former reference prices in order to halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased merchandise tainted by this deceptive pricing scheme. Plaintiff seeks to obtain damages, restitution, and other appropriate relief in the amount by which Barneys was unjustly enriched as a result of its sales of merchandise offered a false discount.

9. Finally Plaintiff seeks reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of

attorneys' fees.

## II. JURISDICTION AND VENUE

10. This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C §1332 (d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Class have a different citizenship from Barneys.

11. The Southern District of California has personal jurisdiction over Barneys because Barneys is a corporation or other business entity authorized to conduct and does conduct business in the State of California. Barneys is registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through its promotion, sales, distribution, and marketing within this State to render the exercise of jurisdiction by this Court permissible.

12. Venue is proper under 28 U.S.C. § 1391 (b)(2) because Barneys transacts substantial business in this District. A substantial part of the events giving rise to Plaintiff's claims arose here.

## III. PARTIES

### Plaintiff

13. Kristen Schertzer resides in San Diego, California. Plaintiff, in reliance on Barneys' false and deceptive price tags, purchased two garments at Barneys Warehouse in Carlsbad, California on October 18, 2018. Ms. Schertzer purchased a Hooded Faux Sherpa Knit Scarf with Fringes ("Hooded Scarf") and a Fatigue CA Camo Crew Long Sleave Sweater ("Camo Crew"). She examined the Hooded Scarf and observed the price tag represented a reference price of $260.00 which was electronically crossed out and replaced with a $129.00 price; a purported 50% savings. She also examined the Camo Crew and observed the price tag represented a reference price of $575.00 which was electronically crossed out and replaced with a $289.00 price; nearly a 50% savings. After observing the price tags on the items and the accompanying signage, Ms. Schertzer

believed that she was receiving a significant discount on the two items she had chosen. Because she liked both items and felt that the discounted price would likely not last, and that she was getting a significant bargain on the merchandise, she proceeded to the register and purchased them. She paid a total of $450.40 on her Visa Debit Card ending in 2669.

14. However, neither of these products were ever offered for sale at the reference price listed on the price tags and certainly not within the 90 days preceding Ms. Schertzer's purchase. Plaintiff was damaged in her purchases because Defendant's false reference price discounting scheme inflated the true market value of the items she purchased. Plaintiff is susceptible to this reoccurring harm because she cannot be certain that Barneys has corrected this deceptive pricing scheme and she desires to shop at Barneys Warehouse in the future. Plaintiff does not have the resources on her own to determine whether Defendant is complying with California and Federal law with respect to its retail pricing practices.

**Defendant**

15. Plaintiff is informed and believes, and upon such information and belief alleges, Defendant Barneys is a Delaware Corporation with its principal executive offices in New York, New York. Barneys operates Barney's Warehouse, a retail outlet store, as well as barneyswarehouse.com website, and advertises, markets, distributes, and/or sells clothing and fashion accessories in California and throughout the United States.

16. Plaintiff does not known the true names or capacities of the persons or entities sued herein as DOES 1-50, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of these Defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## IV. FACTUAL BACKGROUND

### The Fraudulent Sale Discounting Scheme

17. Barneys Warehouse is owned and operated by Barneys New York and offers Barneys New York's designer fashions but at a lower discounted price. Barneys Warehouse offers designer products from Versace, Melillo, Ralph Lauren, Stella McCartney, and many others. The company directly markets its merchandise to consumers in the State of California via its retail Warehouse stores, including its price tags, its online ads and e-commerce website (www.barneyswarehouse.com).

18. Barneys engages in a scheme to defraud its customers by perpetually discounting merchandise sold in its retail outlet store. Barneys consistently advertises the merchandise sold in its retail outlet stores by attaching a price tag to the item with a false reference price and a corresponding sale price immediately beneath the reference price. The reference price is printed in "strikethrough," communicating to the consumer that the reference price is a former price of the item that is now being offered at a substantial discount. The reference price conveys to the customer the purported regular price or former price of the item. The sale price conveys to the customer a deeply discounted price at which the item is presently being offered for sale. *See e.g., Exhibit A.*

19. However, at no time are the products ever offered for sale at the reference price. The reference price is merely a false reference price, which Barneys utilizes to deceptively manufacture a deeply discounted sale price on the merchandise sold online and at Barneys Warehouse retail stores during the Class period.

20. This practice is not accidental. Rather, this practice is a fraudulent scheme intended to deceive consumers into: 1) making purchases they otherwise would not have made; and/or 2) paying substantially more for merchandise consumers believed was heavily discounted and thus, worth more than its actual value.

21. Retailers, including Barneys, understand that consumers are susceptible to a good bargain, and therefore, Barneys has a substantial interest in lying in order to generate sales. A product's reference price or original market price matters to consumers because

it serves as a baseline upon which consumers perceive a product's value. In this case, Barneys has marked the merchandise with an original or regular price which conveys to consumers, including Ms. Schertzer, "the product's worth and the prestige that ownership of the product conveys." *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013) (citing Dhruv Grewal & Larry D. Compeau, Comparative Price Advertising: Informative or Deceptive?, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992) ("By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."); *id.* at 56 ("[E]mpirical studies indicate that as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases.").

22. Barneys' price advertising uniformly includes both the false reference price which is crossed out and the actual sale price immediately beneath the reference price on nearly all items sold at Barneys Warehouse retail stores. This uniform scheme intends to and does provide misinformation to the customer. This misinformation communicates to consumers, including Kristen Schertzerhat the products sold at Barneys Warehouse have a greater value than the advertised discounted price.

23. As the Ninth Circuit recognizes, "[m]isinformation about a product's 'normal' price is…significant to many consumers in the same way as a false product label would be." *See Hinojos*, 718 F.3d at 1106.

**Plaintiff's Investigation**

24. Plaintiff's investigation of Barneys revealed that the merchandise sold at Barneys Warehouse is priced uniformly. That is, the merchandise sold at Barneys Warehouse bears a price tag with a false reference price and substantially discounted sale price printed directly beneath the "crossed out" reference price. Plaintiff's investigation confirmed that the products Ms. Schertzer purchased were priced with a false reference price and corresponding discounted price in the 90-day period immediately preceding Plaintiff's purchase.

25. Plaintiff's counsel' investigation cataloged the pricing practices at Barney's

Warehouse in San Diego County, including the store located at the Carlsbad Premium Outlets, 560 Paseo Del Norte, Carlsbad, California 92008 ("Carlsbad"), for several months prior to Ms. Schertzer's purchases. The false reference price and corresponding discount price scheme was both uniform and identical on almost all of the merchandise sold in store at Barneys Warehouse. The fraudulent price scheme applies to all merchandise offered on sale at Barneys Warehouse, including the merchandise purchased by Ms. Schertzer on October 18, 2018.

**Plaintiff and the Class are Injured by Barneys' Deceptive Pricing Scheme**

26. The reference prices listed and advertised on the products sold at Barneys Warehouse are fake reference prices, utilized only to perpetuate Barneys' fake discount scheme.

27. Barneys knows that its comparative price advertising is false, deceptive, misleading, and unlawful under California and federal law.

28. Barneys fraudulently concealed from and intentionally failed to disclose to Plaintiff and other members of the Class the truth about its advertised discount prices and former reference prices.

29. At all relevant times, Barneys has been under a duty to Plaintiff and the Class to disclose the truth about its false discounts.

30. Plaintiff relied upon Barneys' artificially inflated reference prices and false discounts when purchasing her products from Barneys Warehouse. Plaintiff would not have made such purchase but for Barneys' representations regarding the false reference price and the fictitious sales price of the merchandise. Plaintiff may in the future shop at Barneys Warehouse.

31. Plaintiff and the Class reasonably and justifiably acted and relied on the substantial price differences that Barneys advertised, and made purchases believing that they were receiving a substantial discount on an item of greater value than it actually was. Plaintiff, like other Class members, was lured in, relied on, and was damaged by the deceptive pricing scheme that Barneys carried out.

32.     Barneys intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke Plaintiff and the Class to purchase merchandise in its retail outlet store.

## V.     CLASS ALLEGATIONS

33.     Plaintiff brings this action on behalf of herself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Barneys for violations of California state laws:

> All persons who, within the State of California, from February 14, 2015 through the present (the "Class Period"), who purchased from Barneys Warehouse one or more products from Barneys Warehouse at false discounts from the advertised reference price and who have not received a refund or credit for their purchase(s).

Excluded from the Class are Barneys, as well as its officers, employees, agents or affiliates, and any judge who presides over this action, as well as all past and present employees, officers and directors of Barneys.  Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

34.     *Numerosity*: The class members are so numerous that joinder of all members is impracticable.  Plaintiff is informed and believes that the proposed Class contains hundreds of thousands of individuals who have been damaged by Barneys' conduct as alleged herein.  The precise number of Class members is unknown to Plaintiff.

35.     ***Existence and Predominance of Common Questions of Law and Fact***: This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

    **a.**     Whether, during the Class Period, Barneys used false reference price

        labels and falsely advertised price discounts on products it sold in its retail outlet stores;

    **b.**    Whether, during the Class Period, the reference prices advertised by Barneys were the prevailing market prices for the products during the three months period preceding the dissemination and/or publication of the advertised former prices;

    **c.**    Whether Barneys' alleged conduct constitutes violations of the laws asserted;

    **d.**    Whether Barneys engaged in unfair, unlawful and/or fraudulent business practices under the laws asserted;

    **e.**    Whether Barneys engaged in false or misleading advertising;

    **f.**    Whether Plaintiff and Class members are entitled to damages and/or restitution and the proper measure of that loss; and

    **g.**    Whether an injunction is necessary to prevent Barneys from continuing to use false, misleading or illegal price comparison.

36.    *Typicality*: Plaintiff's claims are typical of the claims of the Class members because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Barneys' false and deceptive price advertising scheme, as alleged herein. Plaintiff is advancing the same claims and legal theories on behalf of herself and all Class members.

37.    *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interest to those of the Class.

38.    *Superiority*: The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action format a particularly efficient and appropriate procedure to afford relief to her and the Class for the wrongs alleged. The damages or other financial detriment suffered by individual Class members is relatively modest compared to the burden and expense that would be entailed by individual litigation

of their claims against Barneys. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent the class action, Class members and the general public would not likely recover, or would not likely have the chance to recover, damages or restitution, and Barneys will be permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

39. All Class members, including Plaintiff, were exposed to one or more of Barneys' misrepresentations or omissions of material fact claiming that former "market" advertised prices were in fact *bona fide*. Due to the scope and extent of Barneys' consistent false "discount" price advertising scheme, disseminated in a years-long campaign to California consumers, it can be reasonably inferred that such misrepresentations or omissions of material fact were uniformly made to all members of the Class. In addition, it can be reasonably presumed that all Class members, including Plaintiff, affirmatively acted in response to the representations contained in Barneys' false advertising scheme when they purchased their products from Barneys Warehouse.

40. Barneys keeps extensive computerized records of its customers through, *inter alia*, customer loyalty programs and general marketing programs. Barneys has one or more databases through which a significant majority of Class members may be identified and ascertained, and it maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## VI. CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Violation of California's Unfair Competition Law ("UCL")**
**California Business and Professions Code § 17200,** *et seq.*

41. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

42. The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

43. The UCL imposes strict liability. Plaintiff need not prove that Barneys intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – but only that such practices occurred.

### *"Unfair" Prong*

44. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

45. Barneys' actions constitute "unfair" business practices because, as alleged above, Barneys engaged in misleading and deceptive price comparison advertising that represented false reference prices and corresponding deeply discounted sale prices. The reference prices were nothing more than fabricated prices leading to phantom markdowns. Barneys' acts and practices offended an established public policy of transparency in pricing, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

46. The harm to Plaintiff and Class members outweighs the utility of Barneys' practices. There were reasonably available alternatives to further Barneys' legitimate business interests other than the misleading and deceptive conduct described herein.

### *"Fraudulent" Prong*

47. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

48. Barneys' acts and practices alleged above constitute fraudulent business acts or practices as they have deceived Plaintiff and are highly likely to deceive members of the consuming public. Plaintiff relied on Barneys' fraudulent and deceptive representations regarding its reference prices for products which Barneys sells at Barneys Warehouse, its retail outlet store. These misrepresentations played a substantial role in Plaintiff's decision to purchase those products at steep discounts, and Plaintiff would not

have purchased those products without Barneys' misrepresentations.

49. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

*"Unlawful" Prong*

50. Barneys' acts and practices alleged above constitute unlawful business acts or practices as they have violated state and federal law in connection with their deceptive pricing scheme. The Federal Trade Commission's Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. § 45(a)(1)) and prohibits the dissemination of any false advertisements. 15 U.S.C. § 52(a). Under the Federal Trade Commission, false former pricing schemes, similar to the ones implemented by Barneys, are described as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former priced is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – *__for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one__*; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.
>
> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

16 C.F.R. § 233.1(a) and (b) (emphasis added).

51. In addition to federal law, California law also expressly prohibits false former pricing schemes. California's False Advertising Law, Bus. & Prof. Code §17501,

("FAL"), entitled "*Worth or value; statements as to former price*," states:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> ***No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement*** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501 (emphasis added).

52. As detailed in Plaintiff's Third Cause of Action below, the Consumer Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), ("CLRA"), prohibits a business from "[a]dvertising goods or services with intent not to sell them as advertised," and subsection (a)(13) prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."

53. The violation of any law constitutes an "unlawful" business practice under the UCL.

54. As detailed herein, the acts and practices alleged were intended to or did result in violations of the FTCA, the FAL, and the CLRA.

55. Barneys' practices, as set forth above, have misled Plaintiff, the proposed Class, and the public in the past and will continue to mislead in the future. Consequently, Barneys' practices constitute an unlawful, fraudulent, and unfair business practice within the meaning of the UCL.

56. Barneys' violation of the UCL, through its unlawful, unfair, and fraudulent business practices, are ongoing and present a continuing threat that Class members and the public will be deceived into purchasing products based on price comparisons of arbitrary and inflated reference prices and substantially discounted sale prices. These false comparisons created phantom markdowns and lead to financial damage for consumers

like Plaintiff and the Class.

57. Pursuant to the UCL, Plaintiff is entitled to preliminary and permanent injunctive relief and order Barneys to cease this unfair competition, as well as disgorgement and restitution to Plaintiff and the Class of all Barneys' revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

**SECOND CAUSE OF ACTION**
**Violation of California's False Advertising Law ("FAL")**
**California Business & Professions Code § 17500, *et seq.***

58. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

59. Cal. Bus. & Prof. Code § 17500 provides:

It is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…"

(Emphasis added).

60. The "intent" required by Section 17500 is the intent to dispose of property, and not the intent to mislead the public in the disposition of such property.

61. Similarly, this section provides, "no price shall be advertised as a former price of any advertised thing, unless the alleged former prices was the prevailing market price…within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

62. Barneys' routine of advertising discounted prices from false reference prices, which were never the prevailing market prices of those products and were materially

greater than the true prevailing prices, was an unfair, untrue, and misleading practice. This deceptive marketing practice gave consumers the false impression that the products were regularly sold on the market for a substantially higher price than they actually were; therefore, leading to the false impression that the products sold at Barneys Warehouse were worth more than they actually were.

63.  Barneys misled consumers by making untrue and misleading statements and failing to disclose what is required as stated in the Code alleged above.

64.  As a direct and proximate result of Barneys' misleading and false advertisements, Plaintiff and Class members have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Barneys to restore this money to Plaintiff and all Class members, and to enjoin Barneys from continuing these unfair practices in violation of the UCL in the future. Otherwise, Plaintiff, Class members, and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

### THIRD CAUSE OF ACTION
**Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq*.**

65.  Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

66.  This cause of action is brought pursuant to the CLRA, Cal. Civ. Code § 1750, *et seq*. Plaintiff and each member of the proposed Class are "consumers" as defined by Cal. Civ. Code § 1761(d). Barneys' sale of the merchandise in its retail outlet store to Plaintiff and the Class were "transactions" within the meaning of Cal. Civ. Code § 1761(e). The products purchased by Plaintiff and the Class are "goods" within the meaning of Cal. Civ. Code § 1761(a).

67.  Barneys violated and continues to violate the CLRA by engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the online merchandise:

      a. Advertising goods or services with intent not to sell them as advertised; (a)(9);

      b. Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions; (a)(13).

68. Pursuant to § 1782(a) of the CLRA, on February 14, 2019 Plaintiff's counsel notified Barneys in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Barneys' intent to act.

69. If Barneys fails to respond to Plaintiff's letter, fails to agree to rectify the problems associated with the actions detailed above, or fails to give notice to all affected consumers within 30 days of the date of written notice, as proscribed by Section 1782, Plaintiff will move to amend his/her Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate against Barneys. As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

## VII. PRAYER FOR RELIEF

70. Wherefore, Plaintiff, on behalf of herself and on behalf of the other members of the Class, requests that this Court award relief against Barneys as follows:

      a. An order certifying the class and designating Kristen Schertzer as the Class Representative and her counsel as Class Counsel;

      b. Awarding Plaintiff and the proposed Class members damages;

      c. Awarding restitution and disgorgement of all profits and unjust enrichment that Barneys obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

      d. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Barneys from continuing the unlawful practices as set forth herein, and directing Barneys to identify, with Court supervision, victims of its misconduct and pay them all money

they are required to pay;

  **e.** Order Barneys to engage in a corrective advertising campaign;

  **f.** Awarding attorneys' fees and costs; and

  **g.** For such other and further relief as the Court may deem necessary or appropriate.

## VIII. DEMAND FOR JURY TRIAL

71. Plaintiff hereby demands a jury trial for all of the claims so triable.

Dated: February 14, 2019    **CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**

*/s/ Todd D. Carpenter*
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: (619) 347-3517
Facsimile: (619) 756-6990
tcarpenter@carlsonlynch.com

*Attorneys for Plaintiff*