1  Amy P. Lally (SBN 198555)
   alally@sidley.com
2  Alexis Miller Buese (SBN 259812)
   alexis.buese@sidley.com
3  **SIDLEY AUSTIN LLP**
   1999 Avenue of the Stars, 17th Floor
4  Los Angeles, CA 90067
   Telephone: 310 595 9662
5  Facsimile: 310 595 9501

6  Alexandria V. Ruiz (SBN 313286)
   aruiz@sidley.com
7  **SIDLEY AUSTIN LLP**
   555 West Fifth Street
8  Los Angeles, CA 90013
   Telephone:  213 896 6055
9  Facsimile:  213 896 6600

10 *Attorneys for Barneys New York, Inc.*

11              **UNITED STATES DISTRICT COURT**

12            **SOUTHERN DISTRICT OF CALIFORNIA**

13 KRISTEN SCHERTZER, on behalf of      ) Case No. 19CV00320-H-LL
   herself and all others similarly situated, )
14                                            )
                                              )
15              Plaintiff,                    ) **DEFENDANT BARNEYS NEW**
                                              ) **YORK, INC.'S MEMORANDUM**
16 vs.                                        ) **AND POINTS OF AUTHORITIES IN**
                                              ) **SUPPORT OF MOTION TO**
17 BARNEYS NEW YORK, INC., a                  ) **DISMISS COMPLAINT**
   Delaware Corporation, and DOES 1-50,       )
18 inclusive,                                 ) Assigned to: Hon. Marilyn L. Huff
                                              )
19              Defendant.                    ) Hearing Date: June 3, 2019
                                              ) Hearing Time: 10:30 am
20                                            ) Place: Courtroom 15A
                                              )
21                                            ) [Filed concurrently with Notice of
                                              ) Motion and Motion to Dismiss;
22                                            ) Declarations of Alexandria V. Ruiz and
                                              ) Roslyn Martinez In Support of Motion to
23                                            ) Dismiss; Request for Judicial Notice;
                                              ) Notice of Motion to Strike,
24 _____        ) Memorandum of Points and Authorities
                                              ) In Support of Motion to Strike]
25

26

27

28

# **TABLE OF CONTENTS**

Page(s)

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

LEGAL STANDARDS ....................................................................................... 4

ARGUMENT ...................................................................................................... 5

I.     THE COMPLAINT SHOULD BE DISMISSED FOR LACK
       OF SUBJECT MATTER JURSIDICTION ......................................... 5

       A.     Schertzer Lacks Standing Under Article III and the UCL,
              FAL and CLRA ...................................................................... 5

       B.     Schertzer Lacks Standing to Represent the Putative Class .......... 8

II.    SCHERTZER FAILS TO STATE ANY PLAUSIBLE CLAIM
       FOR RELIEF ...................................................................................... 9

       A.     Schertzer Does Not Aver Her Allegations of Fraud with
              Particularity .......................................................................... 9

       B.     Schertzer Fails to Allege that Barneys' Price Tags Are
              Likely to Deceive Reasonable Consumers ............................... 13

       C.     Schertzer Cannot State Any Claim for Products She Did
              Not Purchase ........................................................................ 15

III.   PLAINTIFF FAILS TO ALLEGE CONDUCT THAT VIOLATES
       THE "UNLAWFUL" PRONG OF THE UCL ................................... 16

CONCLUSION ................................................................................................. 17

DEFENDANT BARNEYS NEW YORK, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                  **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................... 5, 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................. 5

*Branca v. Nordstrom, Inc.*,
  No. 14cv2062-MMA (JMA), 2015 WL 1841231 (S.D. Cal. Mar. 20,
  2015) .................................................................................................. 3, 15

*Cal. Attorneys for Criminal Justice v. Butts*,
  922 F. Supp. 327 (C.D. Cal. 1996) ............................................................ 7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*,
  20 Cal. 4th 163 (1999) .......................................................................... 16

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
  598 F.3d 1115 (9th Cir. 2010) ............................................................. 4, 8

*Chase v. Hobby Lobby Stores, Inc.*,
  No. 17-00881-GPC-BLM, 2017 WL 4358146 (S.D. Cal. Oct. 2, 2017) ................. 4

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ............................................................... 13

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ................................................................... 14

*Gordon v. Virtumundo, Inc.*,
  575 F.3d 1040 (9th Cir. 2009) ................................................................. 8

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ............................................................... 10

*Kearns v. Ford Motor Co.*,
  567 F. 3d 1120 (9th Cir. 2009) ................................................................. 5

*Kokkonen v. Guardian Life Ins. Co.*,
  511 U.S. 375 (1994) ................................................................................. 4

*Krantz v. BT Visual Images*,
  89 Cal. App. 4th 164 (2001) ................................................................... 16

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (Cal. 2011) ..................................................................... 6

*In re LinkedIn User Privacy Litig.*,
  932 F. Supp. 2d 1089 (N.D. Cal. 2013) .................................................... 11

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .............................................................................. 4, 7

ii

*Makaryan v. Volkswagen Grp. of Amer., Inc.*,
No. CV 17-5086 PA, 2017 WL 6888254 (C.D. Cal. Oct. 13, 2017) ........................ 7

*Mehta v. Wells Fargo Bank, N.A.*,
737 F. Supp. 2d 1185 (S.D. Cal. 2010) ................................................. 16

*Nelsen v. King Cty.*,
895 F.2d 1248 (9th Cir. 1990) .......................................................... 8

*People v. Duz-Mor Diagnostic Lab., Inc.*,
68 Cal. App. 4th 654 (1998) ........................................................... 17

*Rael v. New York & Co., Inc.*,
No. 16-cv-369-BAS(JMA), 2017 WL 3021019 (S.D. Cal. July 17,
2017) ................................................................................. 16

*Rasidescu v. Midland Credit Mgmt., Inc.*,
435 F. Supp. 2d 1090 (S.D. Cal. 2006) ................................................. 11

*Safransky v. Fossil Grp., Inc.*,
No. 17cv1865-MMA(NLS), 2018 WL 1726620 (S.D. Cal. April 9,
2018) ................................................................................. 14

*Schertzer v. Alpargatas USA, Inc.*,
No. 19-cv-394 LAB MSB (S.D. Cal. 2019) ............................................. 1, 7

*Schertzer v. Bank of America*, N.A.,
No. 19-cv-00264 JM MSB (S.D. Cal. 2019) .............................................. 7

*Schertzer v. Kate Spade & Company, LLC*,
No. 19-cv-330 AJB JLB (S.D. Cal. 2019) ............................................. 1, 7

*Schertzer v. Samsonite Company Stores, LLC*,
No. 19-cv-00639 JLS MSB (S.D. Cal. 2019) ........................................... 1, 8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F.Supp.2d 942 (S.D. Cal. 2012) ..................................................... 4

*Vess v. Ciba-Geigy Corp., USA*,
317 F.3d 1097 (9th Cir. 2003) .................................................. 5, 11, 12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ..................................................................... 8

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) .......................................................... 13

iii

**Statutes**

28 U.S.C. § 1332(d) ................................................................................................9

Cal. Bus. & Prof. Code § 17200, *et seq.*, ...............................................4, 9, 10

Cal. Bus. & Prof Code § 17500, *et seq.*, .............................................................4

Cal. Civ. Code § 1750, *et seq.*, ............................................................................4

**Other Authorities**

16 C.F.R. § 233.1 ..................................................................................................12

Fed. R. Civ. Proc. 12(h)(3) .....................................................................................9

Fed. R. Civ. Proc. 8 ..........................................................................................2, 15

Fed. R. Civ. Proc. 9...........................................................................................2, 5, 13

Fed. R. Civ. Proc. 12(b)(1) .....................................................................................4

Fed. R. Civ. Proc. 12(b)(6) .....................................................................................5

DEFENDANT BARNEYS NEW YORK, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1

## **INTRODUCTION**

2

   Kristen Schertzer ("Schertzer") purports to bring this putative class action

3

against Barneys New York, Inc. ("Barneys") for violations of California's consumer

4

protection statutes arising from her purchase of two garments from Barneys

5

Warehouse in Carlsbad, California on October 18, 2018.  Her visit to the Carlsbad

6

Premium Outlets appear to have led to this suit against Barneys, as well as at least

7

three additional lawsuits against other outlet retailers, which she filed during an

8

approximate three-week span in February, within less than two months of her

9

purchases.  Schertzer's lawsuits include (but are not limited to):

| | | | | |
|---|---|---|---|---|
| *Schertzer v. Kate Spade & Co., LLC* | S.D. Cal. | 19-cv-330 AJB JLB | filed on February 15, 2019 for two handbags purchased at the Carlsbad Premium Outlets on October 18, 2018 | *See* RJN Ex. A ¶ 13. |
| *Schertzer v. Alpargatas USA, Inc.* | S.D. Cal. | 19-cv-394 LAB MSB | filed on February 26, 2019 for sandals purchased from Havaianas at the Carlsbad Premium Outlets on October 18, 2018 | *See* RJN Ex. B ¶ 13. |
| *Schertzer v. Samsonite Co. Stores, LLC* | S.D. Cal. | 19-cv-00639 JLS MSB | filed on February 27, 2019 for luggage purchased at the Carlsbad Premium Outlets on October 18, 2018 | *See* RJN Ex. C ¶ 15. |

17

   Schertzer alleges that Barneys seeks to mislead customers by including on its

18

price tags in its retail outlet stores, Barneys Warehouse, both a market price for the

19

tagged item and the actual price at which the item in question is being offered for sale.

20

Schertzer claims that this pricing structure somehow tricks consumers into thinking

21

the market price is always a former selling price and that the actual price represents a

22

sale or discounted price vis-à-vis the price at which the item was formerly offered for

23

sale by Barneys Warehouse.  But that, of course, is not what the price tag says.

24

Moreover, the price disclosed on the price tag is precisely the amount that Schertzer

25

paid for the merchandise she purchased.

26

   The Complaint suffers from multiple deficiencies warranting dismissal.  To

27

begin, Schertzer's allegations are insufficient to establish standing.  Schertzer lacks

28

Article III standing because her "injury" was self-imposed and is thus not fairly

1

traceable to any conduct by Barneys.  Schertzer also lacks standing to represent a class because, as explained below, Schertzer received a full refund for her purchase, and is excluded from the class she seeks to represent.  As a result, this Court lacks subject matter jurisdiction over this matter.

Schertzer also fails to meet the plausibility standard of Federal Rule of Civil Procedure 8, as well the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  She fails to plausibly or particularly plead key facts, including the identification of a specific representation, why that representation is false, and that Barneys intentionally made that representation.  She also fails to plausibly allege how she, much less a reasonable consumer, could be deceived by the purported representations at issue.  Additionally, Schertzer's allegations are insufficient to support the scope of her claims.  Schertzer apparently seeks to reach beyond the products she purchased to represent a class of California consumers who have purchased any one or more products from Barneys Warehouse.  As Schertzer defines it, "products" include every kind of product sold at Barneys Warehouse, including clothing, shoes, accessories, jewelry, makeup, cologne, perfume, bedding, home goods, and more.  Because of the diversity of dissimilar products, for which Schertzer fails to include any factual allegations, she cannot validly state a claim.

Because the allegations of the Complaint do not establish standing and consist only of a collection of vague and conclusory assertions, her claims in their entirety must be dismissed.

## **BACKGROUND**

Barneys New York is a fashion retailer known for offering designer products. Compl. ¶ 17.  Barneys Warehouse offers its designer style at reduced prices online and at retail outlet locations, including the store Schertzer alleges she visited in Carlsbad, California on October 18, 2018.  *Id.* ¶¶ 13, 17.

During her visit, Schertzer purchased two garments—a Hooded Faux Sherpa Knit Scarf with Fringes in Charcoal ("Hooded Scarf") for $129.00 and a Fatigue CA

1   Camo Crew Long Sleeve Sweater ("Camo Crew") for $289.00.  *Id.* ¶ 13.  On February

2   14, 2019, less than two months later, Schertzer filed this action.

3        In bringing this suit, Schertzer does not assert that she is anything less than

4   satisfied with the garments she purchased.  Instead, Schertzer takes issue with

5   Barneys' pricing practices, which she maintains are deceptive.  *See, e.g.*, *id.* ¶¶ 4-7,

6   18-20, 26-28.  Schertzer claims that she believed the listed market price—described

7   by Schertzer as the "reference price"—to be the price at which the clothes were

8   previously offered for sale at a Barneys' full price retail store, but points to nothing to

9   show that Barney's defined the market price this way.  *Id.* ¶ 6 ("[U]pon information

10  and belief, Barneys' products that are identified with 'white price tags' represent items

11  that were never sold in a Barneys retail store and were made exclusively for Barneys

12  Warehouse.").  The Complaint further alleges—again without any factual support—

13  that the market prices are fictitious and intended to entice bargain hunters with the

14  appearance of purchasing a product of substantially higher quality at the deeply

15  discounted price.  *Id.* ¶ 2.  According to Schertzer, because she liked both items and

16  felt that the discounted price would likely not last, and she was getting a significant

17  bargain on the merchandise, she purchased them.  *Id.* ¶ 13.

18       Schertzer also claims to have conducted an "investigation" where she

19  "cataloged the pricing practices at Barney's [sic] Warehouse in San Diego County,"

20  including the outlet store from which she allegedly purchased the merchandise at

21  issue.  *Id.* ¶ 25.  Significantly, it appears that the investigation began "several months

22  ***prior***" to Schertzer's purchases at issue here.  *Id.* (emphasis added).  As a purported

23  result of this "investigation," Schertzer filed this lawsuit, asserting three claims—

24  violations of the California's (1) Unfair Competition Laws ("UCL"), Cal. Bus. &

25  Prof. Code. § 17200, *et seq.*, (2) False Advertising Laws ("FAL"), *id.* § 17500, *et seq.*,

26  and (3) Consumer Legal Remedies Act ("CLRA"), *id.* § 1750, *et seq.*  *Id.* ¶¶ 41-69.

27  Schertzer brings claims targeting not only the specific merchandise she purchased, but

28  also *any* product purchased from Barneys Warehouse—regardless of whether she

1  actually purchased the product herself and regardless of whether the products are

2  clothing substantially similar to the clothing she purchased.  *Id.* ¶ 33.

3      Notably, the first Barneys heard of Schertzer's issues with her purchase was on

4  February 21, 2019, when the Complaint was served.  *See* Dkt. No. 3.  As of the date of

5  this filing, Barneys has no indication that it has received the CLRA pre-suit notice

6  letter, which was purportedly sent on the same day, rather than in advance of, the

7  filing of this action.  Compl. ¶ 68; Ruiz Decl. ¶¶ 2-3.  Additionally, Schertzer's

8  counsel has not provided Barneys or its counsel with proof of the certification of

9  mailing, Ruiz Decl. ¶ 4, or any other opportunity to respond to her allegations and/or

10  demands.  Despite that, consistent with its exceptional history of customer service,

11  Barneys refunded the full amount of Schertzer's purchase to her original form of

12  payment, a Visa Debit Card ending in 2669.  Martinez Decl. ¶ 3.

13  **LEGAL STANDARDS**

14      Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for

15  "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  The party asserting

16  federal subject matter jurisdiction bears the burden of proving its existence.  *See*

17  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Pursuant to Article

18  III, federal courts lack subject matter jurisdiction where a plaintiff does not have

19  standing to sue.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122

20  (9th Cir. 2010).  To establish Article III standing, the plaintiff must have suffered an

21  injury in fact that is fairly traceable to the challenged action and may be redressed by a

22  favorable ruling of the court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61

23  (1992).

24      Federal Rule of Civil Procedure 12(b)(6), in turn, provides for dismissal of an

25  action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

26  12(b)(6).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

27  need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of

28  his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

1   recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

2   *Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "[A] complaint must contain

3   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

4   its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The

5   plausibility standard requires a plaintiff to demonstrate "more than a sheer possibility

6   that a defendant has acted unlawfully." *Id.* (citation omitted).

7          Further, because all of Schertzer's claims sound in fraud, *see, e.g.*, Compl. ¶¶ 4,

8   18-20, 28, 30-31, her allegations must also meet Federal Rule of Civil Procedure

9   9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125

10  (9th Cir. 2009). This requires that "the circumstances constituting the alleged fraud be

11  specific enough to give defendants notice of the particular misconduct," and that the

12  complaint set forth with the particularity "the who, what, when, where, and how" of

13  the misconduct charged. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th

14  Cir. 2003) (quotations omitted). "A plaintiff must set forth *more* than the neutral facts

15  necessary to identify the transaction. The plaintiff must set forth what is false or

16  misleading about a statement, and why it is false." *Id.* (quotations omitted). Where a

17  claim "is grounded in fraud and its allegations fail to satisfy the heightened pleading

18  requirements of Rule 9(b)," such allegations "must be" disregarded, and "a district

19  court may dismiss the complaint or claim." *Id.* at 1107.

20                              <u>**ARGUMENT**</u>

21  **I.    THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF**

22  **SUBJECT MATTER JURSIDICTION.**

23       **A.    Schertzer Lacks Standing Under Article III and the UCL, FAL and**

24             **CLRA.**

25          First, Schertzer's claims should be dismissed for lack of subject matter

26  jurisdiction because she failed to plead the existence of any injury *caused* by Barneys'

27  pricing practices. The Complaint makes conclusory allegations that Schertzer "relied"

28  upon purported artificially inflated market prices and would not have purchased the

1  merchandise but for the false pricing.  *See e.g.*, Compl. ¶ 30. But, these conclusory

2  statements are belied by the Complaint's more specific allegations regarding

3  Schertzer's so-called "investigation" into Barneys' pricing practices.  In those

4  allegations, Schertzer concedes that she began her investigation of Barneys' pricing

5  practices "several months prior" to her purchase; therefore, she was already aware of

6  the allegedly misleading pricing at the time of her purchase.  *Id.* ¶ 25.  The injuries

7  from which she claims to have suffered because of Barneys' conduct were actually

8  caused by her own actions.

9          Importantly, the UCL and FAL limit standing to those persons who "ha[ve]

10  suffered an injury in fact and ha[ve] lost money or property as a result of" the alleged

11  unfair competition or false advertising.  *See* Cal. Bus. & Prof. Code §§ 17204 (UCL),

12  17535 (FAL); *see also Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326 (Cal. 2011)

13  ("Proposition 64 requires that a plaintiff's economic injury come 'as a result of' the

14  unfair competition or a violation of the false advertising law.").  The CLRA similarly

15  requires a consumer to have "suffer[ed] . . . damages as a result of" a violation of the

16  statute.  Civ. Code § 1780(a).  Put simply, these statutes impose a straightforward

17  causation requirement: A plaintiff may file suit to challenge *only* those practices that

18  are the cause-in-fact of the plaintiff's actual, concrete injuries.  *See, e.g., Kwikset,* 51

19  Cal. 4th at 326 ("The phrase 'as a result of' in its plain and ordinary sense means

20  'caused by' and requires a showing of a causal connection or reliance on the alleged

21  misrepresentation.") (citations omitted).  Because Schertzer was well aware of the

22  format of Barneys' price tags in its outlet store location *before* she made her purchase,

23  she cannot plausibly claim to have lost money or property as a *result of* that format.

24  Accordingly, Plaintiff does not, and indeed cannot, satisfy this requirement as to either

25  her purchase of the Camo Crew and Hooded Scarf, or the other products she purports

26  to challenge but admittedly did not purchase.

27          Similarly, the elements of Article III standing also require that the injury

28  complained of be "fairly . . . . trace[able] to the challenged action of the defendant."

1   *Lujan*, 504 U.S. at 560-61 (alteration in original).  *Cal. Attorneys for Criminal Justice*

2   *v. Butts*, 922 F. Supp. 327, 332 (C.D. Cal. 1996) ("[T]he underlying theme of cases

3   [discussing standing] is that the plaintiff's injuries must be caused by actions of a

4   defendant, and not those of plaintiff or third parties.").  "To the extent that an injury is

5   self-inflicted or due to the plaintiff's own fault, the causal chain is broken and

6   standing will not be established."  *Makaryan v. Volkswagen Grp. of Amer., Inc.*, No.

7   CV 17-5086 PA (KSx), 2017 WL 6888254, at *6 (C.D. Cal. Oct. 13, 2017) (quoting

8   *John & Vincent Arduini Inc. v. NYNEX*, 129 F. Supp. 2d 162, 168 (S.D.N.Y. 2001)).

9        Here, there is no causal link between Schertzer's injuries and Barneys' conduct

10   because her injuries were self-imposed.  When Schertzer purchased her two garments

11   from Barneys Warehouse at the outlets in Carlsbad, California on October 18, 2018,

12   this purchase was just one of a number of purchases she made that day for the purpose

13   of initiating litigation.  Between February 5 and February 27, 2019, Schertzer filed

14   three other "deceptive pricing" suits where she asserts the same three violations of law

15   with respect to purchases made at the same outlets and on apparently the same day as

16   those at issue here.[1]  *Schertzer v. Alpargatas USA, Inc.*, No. 19-cv-394 LAB MSB

17   (S.D. Cal. 2019) RJN Ex. B, ¶ 13 (sandals); *Schertzer v. Kate Spade & Company,*

18   *LLC*, No. 19-cv-330 AJB JLB (S.D. Cal. 2019), RJN Ex. A, ¶ 13 (bags); *Schertzer v.*

19   *Samsonite Company Stores, LLC*, No. 19-cv-00639 JLS MSB (S.D. Cal. 2019), RJN

20   Ex. C, ¶ 15 (luggage).[2]

21        When evaluating a professional plaintiff's claims of harm, the Ninth Circuit has

22   found it "highly significant that the [harms plaintiff] complains of are almost

23   exclusively self-imposed and purposefully undertaken" for the purpose of initiating

24   litigation.  *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1057 (9th Cir. 2009).  Through

25
26   [1] Plaintiff brought a fifth suit, unrelated to pricing, during that time.  *Schertzer v. Bank of America*, N.A., No. 19-cv-00264 JM MSB (S.D. Cal. 2019) (certain credit card fees).

27   [2] The date of purchase is not alleged in the complaint in *Schertzer v. Kate Spade & Company, LLC*, No. 19-cv-330 AJB JLB (S.D. Cal. 2019).  Given the location of

28   purchase, the timing of the suit, and similarity of allegations, Barneys infers that this purchase also occurred October 18, 2018.

7

this lens, Schertzer cannot plausibly allege that she suffered an injury caused by Barneys' purported "fraudulent sale discounting scheme." It is apparent that Schertzer did not purchase her garments because of any deceptive scheme; instead, she purchased the garments to serve as the basis for this suit. As such, Schertzer is deprived of a cognizable injury fairly traceable to Barneys, and she cannot establish standing under Article III or any of the UCL, FAL, or CLRA.

Where a plaintiff lacks Article III standing, the Court necessarily lacks subject matter jurisdiction. *Chandler*, 598 F.3d at 1122. Accordingly, Schertzer's claims should be dismissed.

### B.     Schertzer Lacks Standing to Represent the Putative Class.

Schertzer also lacks standing to represent the putative class because she is not a member of the class she purports to represent.

"A litigant must be a member of the class . . . she seeks to represent." *Nelsen v. King Cty.*, 895 F.2d 1248, 1250 (9th Cir. 1990) (quoting *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) ("[A] class representative must be part of the class."). "This, in turn, requires the litigant to 'establish[] the requisite of a case or controversy with the defendants.'" *Nelsen*, 895 F.2d at 1250 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). "If the litigant fails to establish standing, [s]he may not 'seek relief on behalf of [her]self or any other member of the class.'" *Id.* The class Schertzer seeks to represent is defined as follows:

> All persons who, within the State of California . . . who purchased from Barneys Warehouse one or more products from Barneys Warehouse at false discounts from the advertised reference price and who have not received a refund or credit for their purchase(s).

Compl. ¶ 33. She is excluded from this class because, on March 7, 2019, Barneys issued a refund in the amount of $450.40 to her Visa Debit Card ending in 2669. Martinez Decl. ¶ 3. Since Schertzer cannot properly represent a class, her class claims

8

1    are improper and may be stricken.  *See* Motion to Strike Class Allegations, *filed*

2    *concurrently herewith*, at 4-6.

3           Because Schertzer's class claims must be stricken for lack of membership in the

4    putative class, the Court's jurisdictional hook is no longer present.  Schertzer contends

5    the Court has jurisdiction of this action pursuant to the Class Action Fairness Act of

6    2005 ("CAFA").  Compl. ¶ 10.  However, absent any class claims, CAFA cannot

7    serve as the basis for this Court's jurisdiction.  28 U.S.C. § 1332(d) (expanding

8    federal courts' subject matter jurisdiction with respect to qualifying *class actions*).

9           With no other bases for federal jurisdiction—because Schertzer alleges none—

10   the Court lacks subject matter jurisdiction and must dismiss the case.  *See* Fed. R. Civ.

11   Proc. 12(h)(3) (providing that, if a court "lacks subject-matter jurisdiction, the court

12   must dismiss the action").

13   **II.     SCHERTZER FAILS TO STATE ANY PLAUSIBLE CLAIM FOR**

14           **RELIEF.**

15          The FAL, UCL, and CLRA generally proscribe false advertising to consumers.

16   The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising."  Cal.

17   Bus. & Prof Code § 17200.  The UCL, which prohibits "any unlawful, unfair or

18   fraudulent business act or practice and unfair, deceptive, untrue or misleading

19   advertising," *id.* § 17200, "expressly incorporates the FAL's prohibition of unfair

20   advertising as one form of unfair competition."  *Hinojos v. Kohl's Corp.*, 718 F.3d

21   1098, 1103 (9th Cir. 2013).  Finally, the CLRA prohibits "unfair methods of

22   competition and unfair or deceptive acts or practices," Cal. Civ. Code § 1770,

23   including "[a]dvertising goods . . . with intent not to sell them as advertised" and

24   "[m]aking false or misleading statements of fact concerning reasons for, existence of,

25   or amounts of price reductions."  *Id.* § 1770(a)(9), (13).

26           **A.      Schertzer Does Not Aver Her Allegations of Fraud with**

27                    **Particularity.**

28          Schertzer does not clearly articulate in her complaint in what way the

9

"reference prices" were false or likely to deceive a reasonable consumer.  Rather, her complaint is rife with vague assertions and implications, apparently including theories that: (i) the market price was "false," "fictitious," or "inflated" (*e.g.*, Compl. ¶¶ 19, 27, 30); (ii) the market price was never offered in non-outlet stores (*id.* ¶ 6); and (iii) the merchandise she purchased was made exclusively for Barneys Warehouse (*id.*).  But Schertzer's pleading omits several links from the chain of reasoning necessary to support that claim.

> <u>*First, Schertzer has failed to sufficiently allege any specific misrepresentations*</u>. Schertzer claims she bought the two garments at issue based on "Barneys' representations regarding the false market price and the fictitious sale price of the merchandise." *Id.* ¶ 30.  According to Schertzer, the market price listed on Barneys' price tags "conveys to the consumer the purported regular price or former price of the item." *Id.* ¶ 18.  However, nowhere does Schertzer allege that the price tags themselves contain any specific statements referring to the market price as an "original price" or a "former price," or the sale price as "marked down from" or "reduced from" the "reference price."  Indeed, Exhibit A, which purports to depict a Barneys price tag, is devoid of any statements whatsoever.

Schertzer further alleges that on information and belief "Barneys' products that are identified with 'white price tags' represent items that were never sold in a Barneys retail store and were made exclusively for Barneys Warehouse." *Id.* ¶ 6.  She claims "[t]he deception is magnified for th[e]se products," because the "false" market price causes consumers to believe they are purchasing products of "substantially higher quality" that were "previously offered for sale at a Barneys retail store." *Id.*  Yet again though, Schertzer fails to allege that the price tags, or any other online, print, or in-store signage, contain any specific statements regarding the "quality" of the product, or whether a particular product was sold at a traditional Barneys store.[3]

---

[3] Schertzer cannot base any of her claims on the allegations regarding garments with white price tags.  Schertzer must have read, viewed, or otherwise been exposed to a

10

DEFENDANT BARNEYS NEW YORK, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT

1  Having failed to identify a specific misrepresentation, Schertzer has failed to allege,

2  let alone with particularity, the "who, what, when, where, and how" of Barneys'

3  purported misrepresentations.  *Vess*, 317 F.3d at 1106.

4          *Second, Schertzer does not explain how or why the prices of her garments were*

5  *false or misleading*.  The only specific representations referenced by Schertzer's

6  complaint are the price tags for the garments she purchased.  She states that she

7  "examined" both items and observed that the price tag for the Hooded Scarf

8  "represented a reference price of $260.00 which was electronically crossed out and

9  replaced with a $129.00 price," while the price tag for the Camo Crew "represented a

10  reference price of $575.00 which was electronically crossed out and replaced with a

11  $289.00 price."  Compl. ¶ 13.  However, Schertzer does not explain how the prices are

12  misleading, false, or deceptive.  *Rasidescu v. Midland Credit Mgmt., Inc.*, 435

13  F. Supp. 2d 1090, 1100 (S.D. Cal. 2006) ("Plaintiff fails to specifically identify who

14  made the false statements, where the false statements were made, and most

15  importantly, why the alleged false statements were false and misleading.").

16          According to Schertzer, the market price of the garments she purchased were

17  false because (1) neither of the items were "ever" offered for sale at the listed

18  reference price; (2) neither price was the prevailing market price for the items within

19  the three months preceding her purchase; and (3) it leads consumers to believe they

20  are purchasing a product of substantially higher quality.  Compl. ¶¶ 6, 14.  Her

21  allegations are purportedly corroborated by her "investigation," which "confirmed that

22  the products [she] purchased were priced with a false reference price and

23  corresponding discounted price in the 90-day period immediately preceding" her

24  purchase.  *Id.* ¶ 24.  However, Schertzer's complaint contains no factual support for

25  any of her statements.  Schertzer does not allege that the garments she purchased were

26  not previously sold in the full-line store at the listed market price or even that the

27  _____

representation in order to bring a claim based on it.  *See, e.g.*, *In re LinkedIn User*
28  *Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013).  Nowhere does she
allege that the garments she purchased had white price tags affixed to them.

garments were made exclusively for sale at Barneys Warehouse.  Indeed, adhering to Schertzer's own theory based on 16 C.F.R. § 233.1, if the garments she purchased were transferred from the traditional store, there would be nothing "deceptive" about the market price at all.  And, it is notable that, despite having had the garments in her possession at the time the Complaint was filed, Schertzer does not identify a single defect, or way in which the clothes are substandard, irregular, or of lesser quality.  In other words, after months of study, she cannot find any difference in quality.

Nor does Schertzer allege any factual basis for her conclusion that the price of her garments was not the prevailing market price.  There are no allegations regarding the "market" to which she refers.  From the best Barneys can decipher, the "market" is limited to Barneys Warehouse stores in San Diego County, Compl. ¶ 25—of which there is only one.  Yet, Schertzer offers no factual support as to why the "market" for the garments she purchased is limited to a single Barneys Warehouse store rather than the retail market, or even the retail outlet market, for similar items in the same geographic area.  Absent allegations that "set forth what is false or misleading about a statement, and why it is false," Schertzer's claims cannot satisfy the heightened pleading standard.  *Vess*, 317 F.3d at 1106.

*Third, Schertzer fails to sufficiently plead that Barneys intentionally misrepresented the market price for each of the garments she purchased.*  Rather than allege facts, Schertzer simply asserts that "Barneys knows its comparative price advertising[4] is false, deceptive, misleading and unlawful," Compl. ¶ 27, and it "fraudulently concealed [] and intentionally failed to disclose to [Schertzer] . . . the truth about its advertised discount prices and former reference prices."  *Id.* ¶ 28.  Such conclusory allegations are insufficient under Rule 9(b) because they are not supported by facts, particular or otherwise, demonstrating how Barneys intentionally and falsely

---

[4] Until this point, Schertzer does not appear to assert claims arising from a "comparative" price scheme.  This appears to be a scrivener's error likely attributable to the fact that this complaint is substantially similar to other deceptive pricing actions filed by Schertzer and her counsel.

12

1  represented that the prices listed on the price tags of the purchased garments were

2  either a "former price" or an "original price" of the item.  *See Branca v. Nordstrom,*

3  *Inc.*, No. 14cv2062-MMA (JMA), 2015 WL 1841231, at *6-7 (S.D. Cal. Mar. 20,

4  2015) (concluding that similar conclusory allegations were insufficient under

5  Rule 9(b)).

6      Because Schertzer has failed to sufficiently allege, let alone with particularity,

7  (1) any specific misrepresentations by Barneys, (2) how or why the prices listed on the

8  tags were false or misleading, and (3) that Barneys intentionally misrepresented the

9  market price and sale price listed, all of her claims must be dismissed.

10     **B.    Schertzer Fails to Allege that Barneys' Price Tags Are Likely to**

11          **Deceive Reasonable Consumers.**

12     To successfully state her claims, Schertzer must allege that Barneys' purported

13  misrepresentations are likely to deceive a reasonable consumer.  *See Williams v.*

14  *Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (requiring courts to evaluate

15  claims for false or misleading advertising from the perspective of a reasonable

16  consumer).  "A reasonable consumer is 'the ordinary consumer acting reasonably

17  under the circumstances.'"  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1161-

18  62 (9th Cir. 2012).  "Likely to deceive" generally requires that it be "probable" that a

19  "significant portion" of general or targeted consumers, could be "misled" by the

20  representation at issue.  *In re Sony Gaming Networks & Customer Data Sec. Breach*

21  *Litig.*, 903 F. Supp. 2d 942, 967 (S.D. Cal. 2012).  "In determining whether a

22  statement is misleading under the statute, the primary evidence . . . is the advertising

23  itself."  *Safransky v. Fossil Grp., Inc.*, No. 17cv1865-MMA (NLS)2018 WL 1726620,

24  at *9 (S.D. Cal. April 9, 2018) (internal quotation marks and citation omitted).  Courts

25  routinely dismiss complaints where, like here, a plaintiff has not plausibly alleged

26  how she, much less a reasonable consumer, could be deceived by the purported

27  misrepresentation.  *See, e.g.*, *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir.

28  1995) (affirming dismissal of complaint raising claims under CLRA and Unfair

1  Business Practices Act for failure to plausibly allege how statements were deceptive

2  when accompanied by disclaimers); *see also Chase v. Hobby Lobby Stores, Inc.*, No.

3  17-00881-GPC-BLM, 2017 WL 4358146, at *9 (S.D. Cal. Oct. 2, 2017) (dismissing

4  UCL, FAL, and CLRA claims premised on allegedly misleading price tags because

5  plaintiff did "not adequately allege with the requisite specificity 'how' the

6  advertisements could be misleading to a reasonable consumer").

7         Schertzer does not, because she cannot, allege that the price tags at Barneys

8  Warehouse are likely to deceive reasonable consumers into believing that the market

9  price is the "former price" of an item.  Indeed, Schertzer disregards this requirement

10 entirely.  The Complaint does not even mention the "reasonable consumer" at all.

11 Schertzer's allegations regarding her purchases illustrate this point.  According to the

12 Complaint, Schertzer "observed" the price tags of her chosen garments and then

13 purchased them, believing that she was receiving a "significant" discount.  *See* Compl.

14 ¶ 13.  She then claims the "discount" was false because the listed market price for

15 each of her garments was inflated; the price was not the prevailing market price, nor a

16 price at which either garment was previously sold.  *Id.* ¶ 14. Yet, Schertzer never

17 alleges that **she** believed the market price was the "former price" of either item or that

18 she was exposed to or relied on any other representations by Barneys that led her to

19 believe that the market price was the "former price" at which, for example, Barneys

20 Warehouse sold the garments.  If Schertzer cannot adequately plead deception on her

21 behalf, she certainly cannot do so pursuant to the reasonable consumer standard.

22 *Branca*, 2015 WL 1841231, at *7 (holding that plaintiff's allegations failed to

23 establish that defendant's price tags "are likely to deceive reasonable consumers"

24 because she did not adequately plead deception herself).  Accordingly, Schertzer has

25 failed to state her claims under the UCL, FAL, and CLRA, and they must be

26 dismissed.

27

28

1

2

### C.     Schertzer Cannot State Any Claim for Products She Did Not Purchase.

3      Each of Schertzer's claims also fail to the extent they are premised upon

4   products she did not purchase.  Schertzer does not plead facts sufficient, let alone with

5   particularity, to expand her claims to additional, substantially different products.

6      The Complaint provides that Schertzer purchased two garments from Barneys

7   Warehouse—a Hooded Scarf and Camo Crew.  Compl. ¶ 13.  Yet, Schertzer purports

8   to bring a suit on behalf of all persons in California "who purchased from Barneys

9   Warehouse one or more products . . . at false discounts from the advertised reference

10  price."  *Id.* ¶ 33.  "Products," as used in Schertzer's putative class definition, appears

11  to be defined by Schertzer to include every kind of product sold at Barneys

12  Warehouse, including "clothing, shoes, accessories, jewelry, makeup, cologne,

13  perfume, bedding, home goods, or more."  *Id.* ¶ 8.

14     The expansion of her claims to include every product sold at Barneys

15  Warehouse is improper, as Schertzer provides no factual basis for doing so.  *See Iqbal*,

16  556 U.S. 678 (providing that, under Rule 8, "naked assertion[s] devoid of further

17  factual enhancement" are insufficient) (internal quotations and citation omitted).

18  From the best Barneys can tell, Schertzer's justification for seeking to assert claims

19  based on all products is based on her counsel's "investigation," which concluded that

20  the deceptive pricing scheme was both "on *almost all* of the merchandise sold" and

21  "applies to *all* merchandise on sale."  *See id.* ¶ 25 (emphasis added).[5]  However,

22  entirely absent from the Complaint are any allegations concerning the other

23  substantially dissimilar products.  Schertzer does not allege any facts regarding the

24  representations made with respect to those dissimilar products or why the prices of

25  those dissimilar products are false or misleading.  Schertzer also does not allege any

26  basis for her belief that a reasonable consumer would view the price tags and other

27

28

---

[5] Schertzer's conclusory and conflicting allegations further call into doubt the appropriateness of her claims with respect to all other products sold at Barneys Warehouse.

15

1  advertisements on or concerning a myriad of very different items—which according to

2  her, range from sneakers to sunglasses, backpacks to bathing suits, dog toys to

3  diffusers, and serveware to stationary—in the exact same way.

4      Because the Complaint is devoid of any factual allegations concerning the other

5  products Schertzer seeks to expand her claims to, they necessarily fail and must be

6  dismissed.

7  **III.    PLAINTIFF FAILS TO ALLEGE CONDUCT THAT VIOLATES THE**

8      **"UNLAWFUL" PRONG OF THE UCL.**

9      The Complaint also fails to allege an "unlawful" act to support a UCL claim

10  under the statute's unlawful prong.  The unlawful prong of the UCL "'borrows'

11  violations of other laws" and makes them independently actionable.  *Cel-Tech*

12  *Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999)

13  (citations omitted).  Thus, violations of the CLRA and FAL also constitute violations

14  of the UCL.  *See Rael v. New York & Co., Inc.*, No. 16-cv-369-BAS(JMA), 2017 WL

15  3021019, at *5 (S.D. Cal. July 17, 2017) ("Because the Court finds Plaintiff

16  adequately alleges a violation of the FAL and the CLRA, Plaintiff also adequately

17  alleges a violation of the UCL 'unlawful' prong.").  However, where the underlying

18  "borrowed" claim is inadequately alleged, the derivative UCL claim necessarily fails.

19  *See, e.g.*, *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001) (holding that

20  a UCL claim will "stand or fall" with the alleged underlying predicate

21  violation); *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal. App. 4th 654, 673

22  (1998) ("the Act requires a violation of law, and…a defense to the underlying offense

23  is a defense under the Act"); *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185,

24  1206 (S.D. Cal. 2010) (UCL claim "stands and falls with the viability of Plaintiff's

25  other claims").

26      The other laws Schertzer references in the allegations concerning her UCL

27  claim are the FTCA, FAL, and CLRA.  Compl. ¶ 54 ("As detailed herein, the acts and

28  practices alleged were intended to or did result in violations of the FTCA, FAL, and

CLRA.").  As set forth in Section II, *supra*, the allegations in the Complaint are insufficient to state a claim under any of those statutes.  Schertzer's allegations regarding "unlawful" conduct under the UCL are, accordingly, similarly inadequate. For this reason, as well, Schertzer's UCL claim should be dismissed.

### CONCLUSION

For the foregoing reasons, Barneys respectfully requests that the Court grants its Motion to Dismiss.

Respectfully submitted,

Date:  April 26, 2019

**BARNEYS NEW YORK, INC.**

By:  */s/ Amy P. Lally*
     Amy P. Lally

*Attorneys for Defendant*
Barneys New York, Inc.

DEFENDANT BARNEYS NEW YORK, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT